IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

T.P., by and through his )
parents T.P. and B.P.; T.P.; )
and B.P.; )
 )
    Plaintiffs, )
 )
v. )  CASE NO. CV413-107
 )
BRYAN COUNTY SCHOOL DISTRICT, )
 )
    Defendant. )
 )

## O R D E R

Before the Court is Defendant Bryan County School District's Motion to Dismiss. (Doc. 5.) For the following reasons, Defendant's motion is **GRANTED** and Plaintiffs' complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

## BACKGROUND

I. <u>FRAMEWORK OF THE INDIVIDUALS WITH DISABILITIES EDUCATION IMPROVEMENT ACT</u>

This case questions whether the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. §§ 1400-1482, imposes a two year statute of limitations for families to request an independent educational evaluation ("IEE") in response to a school district's assessment. As the successor to the Education of the Handicapped Act, the IDEA represents the federal

government's interest in promoting the education of handicapped children. See M.M. ex rel C.M. v. Sch. Bd. of Miami-Dade Cnty., 437 F.3d 1085, 1094 (11th Cir. 2006) (per curiam). The IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living," 20 U.S.C. § 1400(d)(1)(A), and "to ensure that the rights of children with disabilities and parents of such children are protected," id. § 1400(d)(1)(B). Therefore, to safeguard that disabled students receive free and appropriate public education the IDEA guarantees the right to an individualized education program ("IEP"). See id. § 1414(d).

The public agency responsible for educating the disabled student formulates and develops an IEP during meetings between school officials and parents. Id. § 1414(d)(1). Following an initial evaluation, the student is reevaluated every three years, unless the parent and the school agree that the reevaluation would be unnecessary. 34 C.F.R. § 300.303. Should a parent disagree with the school's assessment, the parent may request that the school provide an IEE at public expense. Id. § 300.502. When

2

such a request is made, a school must elect to defend its evaluation or provide the IEE. Id. § 300.502(b)(2).

Should the school fail to provide an IEE, the parent may request a due process hearing in front of an impartial Administrative Law Judge ("ALJ") and seek to force the school to conduct an IEE. Id. § 300.507. However,

> [t]he due process complaint must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint, or, if the State has an explicit time limitation for filing a due process complaint under this part, in the time allowed by that State law . . . .

Id. § 300.507(a)(2); accord 20 U.S.C. § 1415(b)(6)(B). Following a decision by the ALJ, the aggrieved party may appeal that decision to federal court. Id. § 1415(i)(2). When ruling on an appeal, the district court conducts a de novo review, but has discretion to defer to the ALJ's findings of fact. See CP v. Leon Cnty. Sch. Bd. Fla., 483 F.3d 1151, 1156 n.4 (11th Cir. 2007).

II. FACTUAL BACKGROUND

Plaintiff T.P. is a disabled child who attends school in Defendant Bryan County School District and is covered under the IDEA.[1] (Doc. 1 ¶ 4.) In September 2010,

---

[1] Unless otherwise noted, the Court is using the facts as found by the ALJ. See CP, 483 F.3d at 1156 n.4. However,

3

Defendant conducted psychological, occupational, physical, speech, and language evaluations of Plaintiff T.P. (Id., Attach. 2 at 1.) On September 30, 2010, these findings were presented to Plaintiff T.P.'s parents ("Plaintiff Parents") along with an IEP. (Id. at 1-2.) Neither of Plaintiff Parents expressed any disagreement with Defendant's IEP. (Id. at 2.)

On September 21, 2011, Defendant held an annual review of Plaintiff T.P.'s IEP. (Id.) Plaintiff T.P.'s father attended the meeting and did not offer any disagreement with the IEP. (Id.) On September 19, 2012, Defendant held a second annual review of the IEP. Both Plaintiff Parents attended this meeting, neither raising any objections to Defendant's conclusions. Plaintiff T.P.'s mother indicated in writing that no additional data was required to determine (1) "[p]resent levels of performance and educational needs of the student (e.g. transition and postsecondary planning);" (2) "[w]hether the student continues to need special education and related services;" and (3) "whether any additions or modifications to the special education and related services are needed to meet

---

the facts are not in dispute in this case, which presents only a question of law.

IEP goals and participate, as appropriate, in the general curriculum." (Id. at 2-3.)

On November 5, 2012, Plaintiff Parents met with Defendant's Director of Special Education—Dr. Laura Murphy—to add additional goals and objectives to the IEP. (Id. at 3.) It was at this meeting that Plaintiff Parents expressed dissatisfaction with Defendant's assessment and IEP, voicing their desire to have Plaintiff T.P. privately evaluated. (Id.) On November 7, 2012, Plaintiff Parents emailed Defendant, stating that they considered the evaluation improper and requesting Defendant arrange payment for an IEE. (Id.)

On November 20, 2012, Dr. Murphy sent an email response to Plaintiff Parents stating that Defendant was considering their request. (Id. at 3-4.) Dr. Murphy asked, in light of their lack of concern over the last two years, which portions of the IEP Plaintiff Parents found objectionable. (Id. at 4.) In addition, Dr. Murphy requested that Plaintiff Parents consent to evaluations conducted by Defendant prior to pursuing any IEE at public expense. (Id.)

Plaintiff Parents did not respond to Dr. Murphy's email. Instead, they contacted Defendant's Chairman of the Board—Eddie Warren—and requested that Defendant provide an

5

IEE at public expense. (Id.) On December 3, 2012, Defendant's Superintendent—Dr. Paul Brooksher—responded to Plaintiff Parents' letter, asking that they work with Dr. Murphy and explaining that Defendant's first response to IEE requests is to suggest that Defendant conduct a reevaluation of the student. (Id.) In response, Plaintiff Parents emailed Mr. Warren, alleging that Defendant was violating state and federal law by ignoring their requests. On December 4, 2012, Plaintiff Parents again contacted Mr. Warren and inquired whether Defendant would comply with state and federal law.

Additional email exchanges occurred with Plaintiff Parents insisting that they had a right to an IEE at public expense, were not required to supply a reasoning for their request, and that they would only agree to Defendant's reevaluation after Defendant provided an IEE. (Id. at 5.) In a December 7, 2012 letter from Dr. Murphy, Defendant denied Plaintiff Parents' request, stating that the applicable two-year statute of limitations had run on their right to request an IEE based on the September 2010 assessment. (Id.) Dr. Murphy also stated that Defendant would treat Plaintiff Parents' time-barred IEE request as seeking reevaluation of Plaintiff T.P. (Id.) The letter set a meeting to discuss the reevaluation for December 14,

2012 and notified Plaintiff Parents that they may seek an IEE if dissatisfied with the results of the reevaluation. (Id.) Plaintiff Parents did not attend the December 14, 2012 meeting. (Id. at 6.) In addition, Plaintiff Parents failed to respond to Dr. Murphy's request that Defendant be permitted to conduct its reevaluation of Plaintiff T.P. (Id.)

On December 21, 2012, Defendant requested a due process hearing in front of an ALJ. (Doc. 1 ¶ 51.) In their request, Defendant argued that Plaintiff Parents' request for an IEE was untimely. (Id.) On January 14, 2013, Plaintiff Parents requested their own due process hearing. (Id. ¶ 52.) In their request, Plaintiff Parents maintained that Defendant had wrongfully failed to provide Plaintiff T.P. with an IEE at public expense. (Id.) On January 25, 2013, the ALJ granted Defendant's Motion for Summary Determination, concluding that Plaintiff Parents' IEE requests were barred by the two year statute of limitations found in 20 U.S.C. § 1415(b)(6)(B) and 34 C.F.R. 300.507(a)(2). In response, Plaintiffs filed with this Court a complaint (Doc. 1) seeking an appeal of the ALJ's decision, to which Defendant has filed this present Motion to Dismiss (Doc. 5).

7

**ANALYSIS**

Despite the consideration of matters outside the complaint, such as the administrative record below, Plaintiffs' complaint is reviewed under Federal Rule of Civil Procedure 12(b)(6). See Sch. Bd. of Manatee Cnty., Fla. v. L.H. ex rel D.H., 666 F. Supp. 2d 1285, 1287-88 (M.D. Fla. 2009). Under this standard, Plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[2] "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

---

[2] Iqbal makes clear that Twombly has been the controlling standard on the interpretation of Federal Rule of Civil Procedure 8 in all cases since it was decided. Iqbal, 556 U.S. at 684 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8 . . . [that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts." (internal quotations and citations omitted)).

Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).

In their complaint, Plaintiffs claim that the ALJ erroneously applied a two-year statute of limitations when dismissing their claim that Defendant improperly denied Plaintiff T.P. an IEE. (Doc. 1 ¶ 55.) The IDEA bars a party from bringing a due process complaint for violations that occurred more than two years after "the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows." 20 U.S.C. § 1415(b)(6)(B); accord 34 C.F.R. § 300.507(a)(2). The corresponding section of the Code of Federal Regulations recognizes that the failure to provide an IEE is an action that may be remedied by filing a due process complaint. 34 C.F.R. § 300.507; see 34 C.F.R. § 503(a).

A simple, plain-language interpretation of these provisions quickly leads the Court to conclude that Plaintiffs' complaint is barred by the two-year statute of limitations contained in § 1415(b)(6)(B). It is the September 2010 evaluations that form the basis for Plaintiff's IEE request. The earliest Plaintiff Parents

expressed any dissatisfaction with those evaluations was November 5, 2012, approximately two months past the two-year window. In addition, Plaintiffs do not argue that sometime later than September 2010 is when they "knew or should have known" about the alleged deficiency of Defendant's evaluations. 20 U.S.C. § 1415(b)(6)(B). Based on these undisputed facts, the Court concludes that Plaintiffs' November 5, 2012 complaint is untimely with respect to requesting an IEE based on Defendant's September 2010 evaluations of Plaintiff T.P. As a result, Defendant's Motion to Dismiss is **GRANTED** and Plaintiffs' complaint is **DISMISSED**.

In an attempted end-around, Plaintiffs contend that a two-year limitations period violates 34 C.F.R. § 300.502(e), which prohibits a public agency from "impos[ing] conditions or timelines related to obtaining an independent educational evaluation at public expense." They conclude that "[t]he applicable federal regulation *directly prohibits* [Defendant] from imposing timelines related to obtaining an IEE's [sic]." (Doc. 7 at 13 (triple emphasis in original).) This highly questionable and strained interpretation lacks merit. Again, a plain-language interpretation of this regulation indicates that it, at most, prohibits a public agency from imposing

10

timelines on obtaining an IEE. Contrary to Plaintiffs' characterization, § 1415(b)(6)(B) is not a limitation imposed by a public agency, but rather a jurisdictional limitation imposed by Congress on a party's right to seek redress for actions greater than two years old. Defendant's decision to enforce the applicable statute of limitations does not operate as an agency imposed limitation and, therefore, is not prohibited by the § 300.502(e).[3]

In addition, Plaintiffs argue that the actual wrongdoing for which they seek relief is Defendant's denial of their IEE request. (Doc. 7 at 13-17.) Plaintiffs' reason that their right to seek due process is not even ripe until the denial of their IEE request, permitting them to request a due process hearing for two years past that date. (Id.) Plaintiffs' verbal shell-game, however, does not serve to vindicate their position. It is Plaintiffs' disagreement with Defendant's September 2010 assessment, not Defendant's denial of an IEE, that forms the basis of Plaintiffs' complaint. In that regard, Plaintiffs' request for an IEE is their remedy, the denial of which is not an

---

[3] Not surprisingly, Plaintiffs could not direct the Court to a single decision supporting their interpretation. Indeed, the Court's search for such authority proved equally unfruitful.

independent violation that resets the two-year statute of limitations imposed by Congress. Plaintiffs' theory would render the statute of limitations meaningless because a party may just file suit whenever a school district denies a request for an IEE, regardless of when the conduct that formed the basis for the IEE request actually occurred.[4] This system would permit endless litigation and completely subvert the language and purpose of the statute.

## CONCLUSION

For the foregoing reasons, Defendant Bryan County School District's Motion to Dismiss (Doc. 5) is **GRANTED** and Plaintiffs' complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 24th day of March 2014.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[4] For example, even the denial of a second request for an IEE, the denial of which in the first instance was upheld, would reset the two-year clock and permit a party to litigate its merits yet again.